AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Saul Abraham QUINTANA<br><br>Defendant(s) | ) ) ) ) ) ) ) )   Case No. EP17MJ4525 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 26, 2017__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) and (a)(1)(B)(i) | knowingly, intentionally, and unlawfully conspired, combined, confederated, and agreed together, and with others known and unknown, to commit offenses against the United States, namely: knowing and in reckless disregard of the fact that an alien has come to, entered, and remained in the United States in violation of law, did transport, move, and attempt to transport and move such alien within the United States by means of transportation and otherwise, in furtherance of said violation of law. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_Complainant's signature_

Jesus Otero, Border Patrol Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 01/27/2017

_Judge's signature_

City and state:   El Paso, Texas                   Leon Schydlower, U.S. Magistrate Judge
_Printed name and title_

Oath Telephonically Sworn
At __12:00__ PM
Fed.R.Crim.P. 4.1(b)(2)(A)

CONTINUATION OF CRIMINAL COMPLAINT

WESTERN DISTRICT OF TEXAS

Saul Abraham QUINTANA

PEPT# PEPT170100389

01/26/2017

FACTS    (CONTINUED)

On January 26, 2017 at approximately 2:50 a.m., the Clint Border Patrol Station advised of a sensor activation west of the Tornillo, Texas Port of Entry. Border Patrol Agent Carlos Lara responded to the area and observed three individuals running in the middle of an open field northwest from the U.S./Mexico International Boundary Fence.  Agent Lara approached the three individuals, identified himself as a Border Patrol Agent and questioned them as to their citizenship.   All three individuals stated that they were not citizens of the United States and not in possession of Immigration documents allowing them to be, enter, remain in the United States legally.  All three individuals were transported to the Clint Border Patrol Station for further processing.
At approximately 5:25 a.m., at the Clint Border Patrol Station, Border Patrol Agents Alfredo Herrera and Jorge Escalante assigned to the Counter Network Enforcement Unit (CNEU) plain clothes unit noticed that one of the cellular phones was ringing and asked the owner of the phone later identified as the MATERIAL WITNESS for permission to use the phone and to impersonate him.  The MATERIAL WITNESS consented and gave Agent Herrera authorization in writing to use the phone.  Agent Herrera asked the MATERIAL WITNESS about what instructions he was given by the smuggler when he illegally crossed the border fence.  The MATERIAL WITNESS stated that he was instructed call the smuggler and give him their location.  The MATERIAL WITNESS further stated that he was willing to cooperate and he himself was willing to call the smuggler known as "Mister" and set up a pick up location to further the case.

Agent Escalante took the MATERIAL WITNESS outside of the Border Patrol Station to get better phone signal and call the smuggler known as "Mister".  Agent Escalante dialed the cell phone contact "Mister" and a male voice answered and asked for his location.

Below is a paraphrase of the phone conversation that took place between "Mister" and the MATERIAL WITNESS witnessed by Border Patrol Agent Escalante on the MATERIAL WITNESS's phone.

1st initial phone call (Mister 011526564636097)
Male:  Donde estan? (Where are you guys?)
The MATERIAL WITNESS:  Seguimos caminando y pasamos las vias del tren, la migra estaba cerca y tuvimos que seguir corriendo pero ya estamos seguros.  (We kept on walking and we passed the railroad tracks, Border Patrol was close so we had to run but we are safe now.)
Male:  Esta bien, hablenme cuando lleguen a un lugar conocido.  (Ok, call me when you guys get to a familiar place.)

CONTINUATION OF CRIMINAL COMPLAINT

WESTERN DISTRICT OF TEXAS

Saul Abraham QUINTANA

PEPT# PEPT170100389

01/26/2017

FACTS    (CONTINUED)
2nd phone call (Mister 011526564636097)
The MATERIAL WITNESS: Bueno (Hello)
Male: Donde estan? (Where are you guys?)
The MATERIAL WITNESS: Acabamos de llegar a un hotel. Estamos atras del estacionamiento por un edificio verde. (We just arrived to a hotel, we are in the back towards the parking lot, behind a green building.)
Male: Cual hotel? Digame el nombre del hotel? (Which hotel? Tell me the name of the hotel and what color is the building?)
The MATERIAL WITNESS: Esta bien (Ok)

3rd phone call (Mister 011526564636097)
Male: Ya consigio el nombre del hotel? Y el color?(Did you find out the name of the hotel? And color?)
The MATERIAL WITNESS: Si, es un edificio amarillo. (Yes it's a yellow building.)
The MATERIAL WITNESS: Se llama Best Western. (The name is Best Western.)
Male: Ok, ay ya va el levanton. Se llama Saul. (Ok, the pick up driver is on his way, his name is Saul.)

4th phone call (Mister 011526564636097) on a 3 way conversation with pickup driver Saul.
Male: Como dijo que se llamaba el hotel? (What did you say the name of the hotel is?)
The MATERIAL WITNESS: Best Western (El Salvadorian voice)
Male: Ok, tiene una coronita el letrero? (Ok, does the sign have a small crown?)
Male: Ahorita le marco, como en 15 minutos. (I'll call you back in 15 minutes.)

5th phone call (Saul 011526563597100)
The MATERIAL WITNESS: Bueno, Saul? (Hello, Saul?)
Male: No me diga por mi nombre. (Don't call me by my name.)
Male: Donde estan? (Where are you at?)The MATERIAL WITNESS: En el Best Western atras en el estacionamiento, atras de un edificio verde. (We are at the Best Western in the back parking lot behind a green building.)

Approximately five minutes later, Border Patrol Agents Alfredo Herrera and Jose Apodaca who had been hiding in the back parking lot of the Best Western Hotel, and Border Patrol Agent Luis Seijas, driving an unmarked unit and in plain clothes noticed a Gold Durango drive up to the agents posing as Undocumented Aliens (UDA's), stop and make a U turn in the parking lot of the Best Western Hotel. Agent Seijas notified Agents Herrera and Apodaca about the Dodge Durango. Agent Herrera confirmed that he had visual of the same Dodge Durango and advised that the vehicle turned into the parking lot and parked few spaces down from Agent Seijas. At this point Agent Escalante who was with the MATERIAL WITNESS advised Agent Herrera that the caller had requested the illegal aliens to walk toward his vehicle. However the MATERIAL WITNESS had told the caller that he was scared and did not want to walk over toward the Durango. A few minutes later the Durango proceeded towards the agents posing as UDA's. At this time Agent Herrera along with Agent Jose Apodaca approached the vehicle.

CONTINUATION OF CRIMINAL COMPLAINT

WESTERN DISTRICT OF TEXAS

Saul Abraham QUINTANA

PEPT# PEPT170100389

01/26/2017

FACTS    (CONTINUED)

In the past illegal alien pickups drivers have taken off at a high rate of speed when approached by a plain clothes Agents.  Due to this fact Agent Apodaca placed a tire deflation device on the rear passenger tire. Agent Herrera opened the passenger rear door and the following is paraphrase conversation between the driver later identified as the DEFENDANT, Saul Abraham QUINTANA and Agent Herrera.

Agent Herrera:  Acabamos de cruzar de ilegales, usted es el que nos va recojer?  (We just crossed illegally, are you the one they sent for us to get picked up?)
DEFENDANT:  Si subanse.  (Yes get in the vehicle.)

At this point Agent Herrera identified himself as a Border Patrol Agent by displaying his badge along with Agent Jose Apodaca.  They instructed the DEFENDANT to turn-off the vehicle at which point the DEFENDANT accelerated the vehicle forward and ran over the tire deflation device.  At this time Agent Seijas immediately responded and engaged his emergency lights in his unmarked unit.  The DEFENDANT noticed the unmarked unit and kept driving with a flat tire towards the exit of the parking lot.  At this time the DEFENDANT makes a right turn on FM 1110 heading north.  The Durango came to complete stop on the red stoplights of FM1110 and Interstate 10.  As Agent Seijas drove up behind the Durango the DEFENDANT accelerated taking the red lights.  Agent Seijas followed with precaution due to the vehicle's flat tire.  At this time the DEFENDANT made a left turn into gateway west access road and Agent Seijas followed the vehicle at a slow rate of speed.  Agent Seijas followed the Durango for half a mile at 20 miles per hour till he noticed the Durango's tire come completely off.  At this point, the DEFENDANT pulled over to the shoulder of the road and came to a complete stop between mile marker 41 and 42.

Agent Seijas parked his unmarked unit behind the Durango and walked towards the driver side door.  At this time the DEFENDANT opened the driver side door and started to get out the vehicle.  Agent Seijas identified himself as a United State Border Patrol and instructed the DEFENDANT to stay inside the vehicle until he got closer to the car.  At this point, Border Patrol Agent Peter Rayon in his full Border Patrol uniform and his marked unit drove up and assisted Agent Seijas on the vehicle stop.  Agent Seijas instructed the DEFENDANT to step out the vehicle and proceeded to ask him what his purpose was for being in the Clint area.  THE DEFENDANT stated that he was going to pick up his friend named "Fred".  Agent Seijas asked why he was fleeing from the scene with a flat tire and his unit with the emergency lights on.  The DEFENDANT stated that he did not know and looked down.  At this time Agent Seijas advised the DEFENDANT that he was being arrested for Alien Smuggling.  The DEFENDANT stated that he was arrested a few months ago for the same reason.  THE DEFENDANT was read his rights via field card, by Agent Apodaca and witnessed by Agent Seijas, THE DEFENDANT would later acknowledge his understanding of his rights by signing form I-214.  THE DEFENDANT was transported to Clint station for further questioning and processing.
At the station the DEFENDANT, Saul was advised of his Miranda rights via Government Form I-214, by BPA Martin Santos and witnessed by BPA Alfredo Herrera.  The DEFENDANT stated he understood his rights and was willing to talk to us without an attorney present.

CONTINUATION OF CRIMINAL COMPLAINT

WESTERN DISTRICT OF TEXAS

Saul Abraham QUINTANA


PEPT# PEPT170100389

01/26/2017

FACTS    (CONTINUED)

The DEFENDANT provided the following sworn statement, but not verbatim, regarding his involvement in the human smuggling scheme.

At the station the DEFENDANT was interviewed by Border Patrol Agents Alfredo Herrera and Martin Santos. THE DEFENDANT stated he was at the parking lot to pickup cash or drugs for his brother. The DEFENDANT stated that he was looking for a blue truck which was supposed to have the cash or the drugs. THE DEFENDANT did not wish to provide a statement under oath that he was there to pick up drugs. The DEFENDANT stated that this statement may incriminate him, however THE DEFENDANT did provide a sworn statement. In his sworn statement THE DEFENDANT denied any involvement in alien smuggling and stated that he was there to pick up money.

The MATERIAL WITNESS was read and advised of his Miranda rights by Agent Jose Ortiz and witnessed by Agent Carlos Lara at the Clint Border Patrol Station. The MATERIAL WITNESS stated he understood his rights and acknowledge his understanding by signing Form I-214. The MATERIAL WITNESS was also willing to answer questions without the presence of an attorney.
The MATERIAL WITNESS provided the following sworn statement, but not verbatim, regarding his involvement in the human smuggling scheme.

The MATERIAL WITNESS stated that he made arrangements to get smuggled into the United States with a person with the nickname of RATON in El Salvador. The MATERIAL WITNESS also stated that he was being charged $5,000 USD of which his parents paid $2,000 USD. The MATERIAL WITNESS advised Border Patrol Agents that his parents electronically transfer the money to RATON which he was going to pay the other smuggler with the nickname of VAQUERO in Mexico. The MATERIAL WITNESS was able to provide receipts via faxed from his wife of the money transfer. The MATERIAL WITNESS stated that VAQUERO was going to do the final arrangements to get smuggled into the United States. The MATERIAL WITNESS also advise agents that he was in possession of two phones and that he gave Agents consent to search his phone and impersonate him in order to further the smuggling case. He also stated that he agreed to continue using his phone and arrange a pickup location while monitor by Border Patrol Agents. The MATERIAL WITNESS also stated that he talked to the pickup driver which his name was SAUL. The MATERIAL WITNESS advised Agents that the name of "Saul" was provided by the smuggler with the nickname of MISTER thru the phone conversation.

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.

Immigration History:
NONE

CONTINUATION OF CRIMINAL COMPLAINT

WESTERN DISTRICT OF TEXAS

Saul Abraham QUINTANA

PEPT# PEPT170100389

01/26/2017

FACTS    (CONTINUED)

Criminal History:
On February 8, 2005, in EL PASO, TX, the DEFENDANT was Convicted of CONSPIRACY TO POSSESSW/ INTENT TO DISTRUBUTE MARIJUANA(F) and sentenced to 60 MONTHS PROBATION.

On May 28, 2005, in EL PASO, TX, the DEFENDANT was Convicted of ASSAULT CAUSING BODILY INJURY(M) and sentenced to 2 YEARS PROBATION.

On May 28, 2005, in EL PASO, TX, the DEFENDANT was Convicted of IMJ CHILD/ELDERLY/DISABLED W/ INT BODILY INJ(F) and sentenced to 2 YEARS PROBATION.

On May 28, 2005, in EL PASO, TX, the DEFENDANT was Convicted of CRIMINAL MISCHIEF>=$1500<$20K (M) and sentenced to 2 YEARS PROBATION.

On September 26, 2011, in EL PASO, TX, the DEFENDANT was Convicted of ASSAULT CAUSES BODILY INJURY FAMILY MEMBER(M) and sentenced to 1 YEAR PROBATION.

On August 4, 2016 in EL PASO, TX, the DEFENDANT was Convicted of 8 USC 1324 TRANSPORTING ALIENS(F), PENDING SENTENCING, SENTENCING HEARING IS SET FOR MARCH 02, 2017..